

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DEBRA DESHAUN BROWN, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-65-A |
| | § | |
| NANCY A. BERRYHILL, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

#### I.   STATEMENT OF THE CASE

Plaintiff Debra Deshaun Brown ("Brown") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act ("SSA").[1] In September 2013, Brown protectively applied for DIB and SSI, alleging her disability

---

[1] The Court notes that there were some issues with Plaintiff timely filing her brief. On September 19, 2016, Plaintiff filed an unopposed motion to extend time to file her brief, explaining that, while she had timely served a copy

1

began on August 4, 2013. (Transcript ("Tr.") 20, 158-61.) After her applications were denied initially and on reconsideration, Brown requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 20, 102-09, 114-19.) The ALJ held a hearing on May 20, 2015 and issued an unfavorable decision on July 8, 2015. (Tr. 17-32, 37-59.) Thereafter, on November 30, 2015, the Appeals Council denied Brown's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-5.) Brown subsequently filed this civil action seeking review of the ALJ's decision.

## I. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful

---

of such brief on Defendant as well as delivered a courtesy copy to the undersigned, she had inadvertently failed to file a copy with the Clerk's office. Thereafter, having obviously received a copy of Plaintiff's brief that had never been properly filed, Defendant filed her response brief on September 21, 2016. On September 23, 2016, the Court granted Plaintiff's motion for an extension of time and ordered Plaintiff to file her brief no later than September 28, 2016. Plaintiff then filed a reply brief on September 29, 2016. The Court, noticing that Plaintiff had never filed a copy of her brief, contacted Plaintiff. At that point, Plaintiff discovered that she had never filed her brief and did so on October 7, 2016. Because Plaintiff's failure to properly and timely file her brief did not prejudice Defendant, the Court will accept and consider Plaintiff's brief as timely filed.

activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404. Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* But if the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work suggested. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II. ISSUES

In her brief, Brown presents, in essence, the following issues:

A. Whether the ALJ erred in failing to weigh the regulatory factors in assessing the medical opinions of Brown's treating physician, Rekha Alexander, M.D. ("Dr. Alexander"); and

B. Whether the ALJ failed to properly evaluate Brown's obesity.

(Plaintiff's Brief ("Pl.'s Br.") at 13-18.)

### III. ALJ DECISION

In his July 8, 2015 decision, the ALJ found that Brown met the insured status requirements of the SSA through December 31, 2017 and that Brown had not engaged in substantial gainful activity since August 4, 2013, the alleged onset date of Brown's disability. (Tr. 22.) The ALJ further found that Brown had the following severe impairments: "diabetes mellitus, neuropathy, status-post broken foot, carpal tunnel syndrome, obesity, hypothyroidism, degenerative joint disease, and asthma." (Tr. 22.) Next, the ALJ held that Brown did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing. (Tr. 22-24.) As to Brown's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but with the following specific limitations: the claimant can stand and walk for four hours in an eight-hour workday; sit for six hours in an eight-hour workday; and lift and carry 20 pounds occasionally and 10 pounds frequently. Further, the claimant is limited to occasional use of foot controls, as well as occasional climbing of ramps and stairs. Additionally, she can only occasionally balance, kneel, and crouch. She can frequently handle, but can never crawl or climb ladders or scaffolds. The claimant is limited to occasional temperature extremes, as well as occasional exposure to concentrated environmental pollutants such as dusts, chemical, and fumes.

(Tr. 24 (emphasis omitted).)

Next, the ALJ found that Brown was not capable of performing her past relevant work but that there were other jobs that existed in significant numbers in the national economy that she could perform. (Tr. 30-32.) Consequently, the ALJ concluded that Brown was not disabled. (Tr. 32.)

### III.  DISCUSSION

#### A.  <u>Treating Physician Opinion</u>

In her brief, Brown argues that the ALJ erred in evaluating the opinions of her treating physician, Dr. Alexander. (Pl.'s Br. at 13-17.) Specifically, Brown claims that the ALJ erred in giving Dr. Alexander's opinions little weight and in failing to weigh all the factors set forth in 20 C.F.R. §§ 404.1427 and 416.927 prior to rejecting the opinions of Dr. Alexander. (Pl.'s Br. at 13-17.)

The ALJ, in making his disability determination, reviewed the medical and other evidence in the record. As to Dr. Alexander's opinions, the ALJ, *inter alia*, stated:

> Rekha Alexander, M.D., the claimant's treating physician, opined that the claimant would need to recline and take unscheduled breaks during an eight-hour workday. Further, Dr. Alexander opined that the claimant could sit for four hours in an eight-hour workday; stand and walk for three hours in an eight-hour workday; and occasionally lift up to 10 pounds. Additionally, Dr. Alexander opined that the claimant had limitations in doing repetitive reaching, handling, and fingering. Moreover, Dr. Alexander opined that the claimant is not physically capable of working eight hours a day or five days a week, and would likely be absent from work more than four days a month. The undersigned affords this opinion little weight, as it is inconsistent with the objective medical evidence of record. As noted above, in late December of 2014, an examination demonstrated no respiratory distress, musculoskeletal tenderness, a normal right knee, and normal ankles. An examination of the claimant's left knee demonstrated decreased range of motion and bony tenderness; however, she exhibited no swelling, effusion, ecchymosis, deformity, laceration, or erythema. One month later, a musculoskeletal examination demonstrated normal range of motion. In March of 2015, the condition of the claimant's left knee was noted to be fair. Further, it was noted that progress had been better following steroid injections. An x-ray of the claimant's left knee demonstrated well-maintained joint space, mild spurring, no fluid in the knee joint, no evidence of fracture, and only mild degenerative changes. The claimant underwent a steroid injection to her left knee at this time. A week later, the claimant denied an inability to bear weight, loss of motion, loss of sensation, muscle weakness, numbness or tingling. A musculoskeletal examination demonstrated normal range of motion. A left lower leg examination demonstrated tenderness and

swelling of the left calf; however, she exhibited no bony tenderness, no edema, and no deformity. Further, bilateral pedal pulses were equal and the claimant exhibited normal coordination. It was recommended that the claimant apply ice to her knee. In late March of 2015, an examination demonstrated normal respiratory effort with no wheezes and no musculoskeletal edema. At this time, only weight loss and epidural steroid injections were recommended with respect to the claimant's knee pain.

(Tr. 29-30 (internal citations omitted).)

Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. §§ 404.1527(b), (d)(1), 416.927(b), (d)(1). Because the determination of disability always remains the province of the ALJ, he can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating

7

physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton*, 209 F.3d at 453; *see* 20 C.F.R. § 416.927. Under the statutory analysis, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) *only* if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

8

Contrary to Brown's arguments, the ALJ did not err in failing to give controlling weight to Dr. Alexander's opinions in her December 8, 2014 Residual Functional Capacity Questionnaire ("RFC Questionnaire"). While Brown disagrees with the ALJ's reasons for not giving more weight to Dr. Alexander's opinions, there is substantial evidence in the record that supports the ALJ's decision. (Tr. 154-56.) In this case, it is clear, as set forth above, that the ALJ **thoroughly reviewed and considered** Dr. Alexander's opinions in the RFC Questionnaire but ultimately decided not to give them controlling or significant weight as they were unsupported by the majority of the medical and examination records in the record, including examination records from Dr. Alexander herself (*see, e.g.,* Tr. 681-83) and other providers as well as medical evidence and opinions from the State Agency Medical Consultants. (Tr. 24-29; *see, e.g.,* Tr. 60-77.)

As to Brown's arguments regarding the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the Court finds that the ALJ performed the required analysis prior to giving little weight to Dr. Alexander's opinions in the RFC Questionnaire. To begin with, as to factors one and two under which the ALJ evaluates the examining and treatment relationship between Brown and Dr. Alexander, the ALJ stated that Dr. Alexander was Brown's "treating physician" and referenced various treatment notes from Dr. Alexander. (Tr. 27, 29-30; *see* 20 C.F.R. §§ 404.1527(c)(1), (2).) As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors that "tend to support or contradict the opinion," the ALJ, as set forth above, provided specific instances of other treatment records and evidence in the record showing that Dr. Alexander's opinions in the RFC Questionnaire were not consistent with much of the other evidence in the record. (Tr. 24-30; *see* 20 C.F.R. §§

9

404.1527(c)(3), (4), (6).) As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). However, in her brief, Brown does not assert that Dr. Alexander is a specialist and, as such, this factor is not relevant. (*See* Pl.'s Br. at 14-15.) Because the ALJ properly considered the opinions of Dr. Alexander, remand is not required.

### B. <u>Obesity</u>

In her brief, Brown argues that, while the ALJ did find Brown's obesity to be a severe impairment, the "ALJ provides little more than a boilerplate recitation of the applicable regulation (SSR 02-1p) followed by the conclusory statement that he has considered it." (Pl.'s Br. at 17.) Brown further states:

> The ALJ's *pro forma* analysis and failure to connect Plaintiff's obesity with her inability to complete the movements required throughout a workday, in particular how DJD in her knees was impacted by obesity and further limited her movements, constituted harmful reversible error. BMI remained at or above 55 throughout the relevant period in this case . . ., and that level of morbid obesity, coupled with DJD, required further analysis from the ALJ.

(Pl.'s Br. at 17-18 (internal citations omitted).)

The social security rulings recognize that obesity, though not a listed impairment, can reduce an individual's occupational base for work activity in combination with other elements. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(Q); SSR 02-1p, 2002 WL 34686281, at *5–7 (S.S.A. Sept. 12, 2002). A claimant's obesity must be considered at all steps of the sequential evaluation process. SSR 02-1p, 2002 WL 34686281, at *3. The ALJ must perform "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id.* at *4.

10

In this case, the ALJ, as noted by Brown, did find that Brown suffered from, *inter alia*, the severe impairment of obesity. (Tr. 22.) As to such obesity, the ALJ noted various times during which Brown was diagnosed with morbid obesity or advised to lose weight and, on at least six occasions, referenced Brown's specific BMI from various treatment and examination records. (Tr. 25-30.) In addition, the ALJ stated:

> There are no Listing criteria in Appendix 1 specific to the evaluation of obesity impairments. However, SSR 02-1p requires consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity. Obesity may have an adverse impact upon co-existing impairments. For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart. Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. These considerations have been taken into account in reaching the conclusions herein at the third step of the sequential evaluation, but the medical evidence fails to demonstrate that the claimant's obesity medical[ly] equals any analogous listing.
>
> . . . .
>
> In terms of obesity, the National Institutes of Health classify individuals as obese if their Body Mass Index (BMI) exceeds 30. BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters. There are three levels of obesity: Level I obesity includes BMI's of 30.0 through 34.9; Level II obesity includes BMIs of 35.0 to 39.9; and Level III obesity (referred to as "extreme obesity"), includes BMIs equal to or greater than 40. As illustrated above, the objective medical evidence of record indicates that the claimant's BMI has consistently been above 50.0, indicating Level III obesity. SSR 02-01p provides that obesity can cause limitations in function; including limitations in sitting, standing, walking, lifting, carrying pushing, pulling, climbing, balance, stooping, and crouching. This Ruling also states that obesity can cause limitations in the ability to manipulate with hands or fingers, limitations in toleration of environmental factors such as heat, humidity, or hazards; and social limitations. Although there is no specific level of weight or BMI that equates with a "severe" or a "not severe"

>impairment nor do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes, an individualized assessment of the impact of obesity on an individual's functioning is done to determine whether the impairment is severe. Accordingly, the undersigned finds that the claimant's Level III "extreme obesity" alone or in combination with her other physical impairments causes significant limitations in her ability to perform basic work activities.

(Tr. 23-24, 27-28 (internal citations omitted).)

In light of the foregoing, the Court finds that the ALJ properly considered Brown's obesity in accordance with the regulations throughout the disability determination and that substantial evidence supports the ALJ's determination. In fact, the ALJ specifically stated that Brown's obesity caused her significant limitations in her ability to perform basic work activities and placed limitations in the RFC determination on Brown's ability to stand, walk, and sit and climb, balance, kneel, crouch, crawl, and climb. Furthermore, Brown has failed to identify any evidence beyond her own speculation that indicates any decreased functioning was attributable to her obesity beyond that which was already considered by the ALJ and incorporated into the RFC determination. *See, e.g., Webb v. Astrue*, No. 4:08-CV-747-Y, 2010 WL 1644898, at *10 (N.D. Tex. March 2, 2010); *Campos v. Astrue*, No. 5:08-CV-115-C, 2009 WL 1586194, at *3-4 (N.D. Tex. June 8, 2009); *Crossley v. Astrue*, No. 3:07-CV-0834-M, 2008 WL 5136961, at *5 (N.D. Tex. Dec. 5, 2008) ("Obesity is not a per se disabling impairment and Plaintiff has offered no medical evidence that her obesity actually results in these limitations or any further limitations beyond the sedentary work level found by the ALJ.") Because substantial evidence supports the ALJ's disability determination and such determination has not been shown to be a product of legal error, remand is not required.

*See Mays*, 837 F.2d at 1364 (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected).

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 23, 2017** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and

the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 9, 2017.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

14